UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

ANTHONY PAUL ZAWISTOWSKI,

                    Plaintiff,

v.                                                   CASE # 18-cv-01432

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

───────────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | JEANNE ELIZABETH<br>MURRAY, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | BENIL ABRAHAM, ESQ.<br>NOAH MICHAEL<br>SCHABACKER, ESQ.<br>LAURA RIDGELL BOLTZ, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 2, 1971, and has a high school education. (Tr. 279, 284). Generally, plaintiff's alleged disability at the time of application was a left leg injury but he testified he had other physical and mental impairments. (Tr. 283). His initial alleged onset date of disability was May 2, 2014 but it amended at the hearing to February 1, 2016. (Tr. 279, 11). His date last insured is December 31, 2018. (Tr. 279).

### B. Procedural History

On June 12, 2014, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (Tr. 117). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 16, 2016, plaintiff appeared before the ALJ, Sharon Seeley. (Tr. 57-133). On September 12, 2017, ALJ Seeley issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 18-34). On October 12, 2018, the Appeals Council ("AC") denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). Thereafter, plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since February 2, 2016, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: history of left wrist fracture; history of left ankle fracture; L5-S1 disc herniation status post left-sided discectomy; sleep apnea; depressive disorder, NOS; anxiety disorder, NOS; and post-concussion cognitive deficit (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) including the ability to sit for a total of six hours during the workday, but must alternate after one hour sitting to standing five minutes (while remaining on task). The claimant could never operate foot controls with the left lower extremity and could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, but never climb ladders, ropes or scaffolds. He could frequently handle and finger with the dominant left upper extremity and could perform work that does not require more than occasional handwriting. The claimant can have no exposure to hazards such as unprotected heights or moving machinery. Further, he could understand, remember or carry out simple, routine, repetitive instructions and tasks; make simple, work related decisions commensurate with such tasks; and maintain attention and concentration sufficient for such tasks with customary work breaks. He could have occasional interaction with supervisors and occasional, incidental interaction with coworkers and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 2, 1971, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of the decision (20 CFR 404.1520(g)).

(Tr. 8-27).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ's RFC is unsupported by substantial evidence. Specifically, he alleges the ALJ erred in evaluating the opinion evidence of record and failed to develop the record, for both the physical and mental evidence of record. (Dkt. No. 13 at 18, 24 [Plaintiff's Mem. of Law]).

### B. Defendant's Arguments

In response, defendant argues the ALJ adequately developed the record. (Dkt. No. 20 at 5 [Def.'s Mem. of Law]). Second, defendant argues substantial evidence supports the physical and mental RFC finding. (Dkt. No. 20 at 9, 12).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Duty to Develop

In her RFC analysis of the physical impairments, the ALJ noted the record did not contain an opinion from a treating source regarding physical function. (Tr. 19). Plaintiff alleges this created a gap in the record. (Dkt. No. 13 at 18-20). Noting what evidence is not in the record does not create a gap in the record that requires recontacting a treating physician. *Jasen v. Comm'r Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, at * 12 (W.D.N.Y. Aug. 29. 2017) (the trigger for recontacting a treating physician is whether the record is sufficient to assess the claimant's RFC without the treating physician's opinion) (citing *Kunkel v. Comm'r Soc. Sec.*, 2013 WL 4495008, at *16 (W.D.N.Y. Aug. 20, 2013) ("the issue is whether the record was adequate to permit the ALJ to determine whether or not [p]laintiff was disabled")). Here the ALJ properly requested not one, but two, consultative examinations to fully develop the record. (Tr. 620-623, 865-876). *See Larkin v. Colvin*, No. 13-CV-0567, 2014 WL 414626, at * 9 (N.D.N.Y. Aug. 14, 2014)(where the record lacks a broad assessment of physical functional limitations by an acceptable medical source, there is an insufficiency in the record that the ALJ should address, either by obtaining the opinion of a consultative examiner or by recontacting a treating physician.) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). In addition to the opinion

evidence from the consultative examiner, the record contained testimony and clinical evidence which the ALJ considered when formulating the RFC. *Jasen v. Comm'r Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, at * 12 (W.D.N.Y. Aug. 29. 2017) (the trigger for recontacting a treating physician is whether the record is sufficient to assess the claimant's RFC without the treating physician's opinion) (citing *Kunkel v. Comm'r Soc. Sec.*, 2013 WL 4495008, at *16 (W.D.N.Y. Aug. 20, 2013) ("the issue is whether the record was adequate to permit the ALJ to determine whether or not [p]laintiff was disabled")). Therefore, there was no need for the ALJ to recontact plaintiff's treating physician.

Plaintiff's argument that the ALJ failed her duty to develop the record in regard to treatment notes from the treating therapist is disingenuous given the facts of this case. At the December 2016 hearing, plaintiff's counsel stated the record was complete. (Tr. 60). The ALJ then asked if there was any medical or other evidence relevant to the determination that had not been submitted, to which counsel responded no. (Tr. 61). The ALJ continued and asked specifically about counseling records from Jessica Rimer, to which counsel responded they were not even aware of a provider by that name. (*Id*.). The ALJ noted the record had no counseling records and plaintiff's counsel conceded they must have overlooked the treatment notes. Plaintiff's attorney said that he would "follow up immediately" on those records and agreed to inform the ALJ within two weeks the status of those records, if more time was necessary to procure them, and if a subpoena would be required for them. (Tr. 131-132).

On December 23, 2016, plaintiff's counsel wrote to the ALJ and requested assistance in procuring mental health records from Dent. (Tr. 399-400). However, on January 10, 2017, and March 21, 2017, plaintiff's counsel provided an opinion from Ms. Rimer, and a psychiatric evaluation from Dent. (Tr. 1096-1100, 1104-06). On April 21, 2017, the ALJ wrote to plaintiff's

7

counsel, noting she had received the December 2016 letter, as well as Ms. Rimer's statement. (Tr. 404). The ALJ went on to ask Plaintiff's attorney to identify (1) whether Ms. Rimer's records were necessary to complete the record and (2) if there were other documents needed to complete the record. (Tr. 404). Plaintiff provided no response, other than a letter from his representative asking for a decision "as soon as possible." (Tr. 406).

Despite failing to respond to the ALJ's April letter, plaintiff argues the ALJ should have done more to obtain Ms. Rimer's records. (Dkt. No. 13 at 28-30). Plaintiff's counsel did not respond to the ALJ's inquiries about whether Ms. Rimer's notes were necessary to complete the record and instead requested the ALJ issue a decision as soon as possible. (Tr. 406). It is well settled that "a representative has an affirmative duty to provide competent assistance to the claimant, including acting with reasonable promptness to help obtain information or evidence the claimant must submit." Social Security Ruling (SSR) 17-4p, 2017 WL 4736894 at *4. The cases cited by plaintiff are not factually similar and do not address a circumstance where claimant, through counsel, committed to providing records then failed to respond with information when requested by the ALJ. "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue,* 522 F.3d 1093, 1097 (10th Cir. 2008).

There was also no duty to recontact treating sources Dr. Zambron and Dr. Belen. Plaintiff's argument that the ALJ had a duty to recontact before rejecting their opinions is without merit. "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record. *See Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir.

2017)(summary order)(citing *Rosa*, 168 F.3d at 79 n.5)); *see also Rebull v. Massanari*, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002). While plaintiff may dispute the lack of weight the ALJ assigned to a doctor's opinion under 20 C.F.R. § 404.1527, this does not activate the duty to re-contact under 20 C.F.R. § 404.1512(e). *Hall v. Astrue*, 677 F. Supp. 2d 617, 628 (W.D.N.Y. 2009); *see Netter v. Astrue,* 272 Fed.Appx. 54, 56 (2d Cir.2008) (Summary Order) ("Netter's final claim is that the ALJ was obliged to affirmatively develop the record because it found Dr. Regalla's clinical records to be lacking. However, the ALJ rejected Dr. Regalla's opinion because it was contradicted by the opinions of other doctors and the record evidence-not because it was inadequately supported by her own clinical records.").

### B. Substantial Evidence

The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. Id. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

#### 1. Physical RFC

Physical examination records showed Plaintiff had a normal gait, full strength, normal coordination, and normal findings in his legs (Tr. 754-55, 774, 779, 1088). Plaintiff testified he was able to drive a couple times a week and that he couldn't work because of left thumb damage and memory issues. (Tr. 17). However, he testified the issue with the thumb is it will spasm, momentarily, about once per day. (*Id*.) Although he had back surgery in 2015, he testified he had not had any further treatment since six or seven months after surgery. (*Id*.). The ALJ discussed examinations performed by consultative examiner Hongbiao Liu, M.D., in 2014 and 2016. (Tr. 620-23, 865-68). At the 2014 exam, plaintiff reported cooking and cleaning, occasionally doing laundry and shopping, as well as some socializing. (Tr. 621). Plaintiff walked and stood normally in 2016, squatted to 30%, and could

9

rise from a chair without difficulty. (Tr. 866-67). At each examination, plaintiff had some range of motion limitations in his lower back, left ankle, and shoulders. (Tr. 622, 867). Nonetheless he had full strength in all areas. (Tr. 622, 867).

Plaintiff simultaneously argues the ALJ did not properly weigh the opinion from consultative examiner Dr. Liu and that the ALJ erred by using her lay opinion to determine the RFC. (Dkt. No. 13 at 21, 23). In 2016, Dr. Liu opined:

> (1) mild-to-moderate limitations in prolonged walking, bending, kneeling, and overhead reaching (2) lift and carry up to 10 pounds continuously, 11 to 20 pounds frequently, 21 to 50 pounds occasionally (3) sit three hours at a time, up to four hours total (4) stand two hours at a time, up to three hours total a day (5) and walk one hours at a time, up to two hours total a day (6) could only occasionally bilaterally reach (7) continuously handle, finger, and feel with his right hand (8) occasionally finger with his left hand (9) continuously feel with his left hand (10) frequently push/pull with his right hand (11) occasionally push/pull with his left hand (12) occasionally use left foot to operate foot controls (13) occasionally climb stairs, raps, ladders or scaffolds (14) occasionally kneel, crouch, and crawl (15) frequent to continuous exposure to environmental conditions. (Tr. 872-73).

The ALJ gave Dr. Liu's 2016 opinion partial weight and properly noted which parts were accepted or rejected. (Tr. 19). The ALJ noted that many of the assessed limitations were inconsistent with the evidence. 20 C.F.R. § 404.1527(c)(4); *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order) (record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions). The ALJ noted plaintiff had specifically testified there was no shoulder impairment and that the record did not demonstrate any shoulder limitation. (Tr. 19). *Salmini v. Comm'r of Soc. Sec.*, 371 F.App'x 109, 112-13 (2d Cir. 2010) (summary order) (ALJ may reject a treating physician's analysis as far as that analysis conflicts with a claimant's own testimony about how the claimant's impairments affect the claimant's functional capacity). Treatment records also did not show plaintiff was unable to flex the first finger of his left hand, which was inconsistent with the fingering limitation. (Tr.

10

19, 754-755, 774, 779, 1088). Dr. Liu's suggestion that Plaintiff could only sit four hours a day was inconsistent with his assessment that Plaintiff could frequently (up to six hours a day) operate a motor vehicle (Tr. 20, 875). *Smith v. Berryhill*, 740 F.App'x 721, 724 (2d Cir. 2018) (summary order) ("A treating physician's opinion may also be rejected if it is internally inconsistent or otherwise uninformative."). The ALJ ultimately found plaintiff was more limited than Dr. Liu. (Tr. 20).

The ALJ provided reasons, supported by substantial evidence, for the weight given to Dr. Liu's opinion. This is contrary to plaintiff's argument that the ALJ "cherry-picked" the opinion. (Dkt. No. 13 at 21-22). Plaintiff appears to disagree with how the ALJ evaluated the evidence but where substantial evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished).

### 2. Mental RFC

The record also contained medical opinions pertaining to plaintiff's mental impairments, as well as, treatment notes which were relied upon by the ALJ in formulating the mental RFC. Plaintiff testified he had memory difficulties and problems with anger but has never acted out in anger and mental status examinations findings have generally been unremarkable. (Tr. 900, 906, 909, 912, 1075-76, 1105). For instance, a mental status examination in December 2015 revealed some memory problems but was otherwise normal. (Tr. 774). A June 2016 cognitive evaluation suggested only mild cognitive deficits, primarily in memory and high-level reasoning/executive function. (Tr. 851). Another mental status examination that same month showed mild anxiety and

11

mild to moderate depression, but normal speech and language, linear and goal-directed thought processes, stable attention and concentration, and no recorded memory problems. (Tr. 1079-80).

Contradicting records of minimal findings, treating source Alfred Belen, M.D., provided an opinion in October 2016 in which he indicated plaintiff had "poor" functioning in every area of functioning. (Tr. 829-30). Dr. Belen asserted that depression "causes poor concentration" but offered no additional evidence or support. (Tr. 830). The ALJ properly gave this opinion little weight and dutifully explained the reasons. Dr. Belen's statement that depression causes poor concentration was characterized by the ALJ as "may be true in theory," but in this case it was not supported by the normal findings. (Tr. 22; *see* Tr. 900, 906, 909, 912, 1075-76, 1105). *See* 20 C.F.R. § 404.1527(c)(3) (opinions that are well-supported are entitled to more weight); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (deference to treating source's opinion was not required where treating physician issued opinions that were not consistent with his own treatment notes and other substantial evidence in the record). Dr. Belen also attempted to make it a retroactive opinion by stating the opined level of functioning went back to a 2014 motorcycle accident, but plaintiff never had any mental health treatment until mid-2015. (Tr. 22). The ALJ also cited plaintiff's own testimony that he had applied for work as recently as March 2015. (*Id.*).

There was also an opinion from treating source Mark Zambron, M.D., which the ALJ gave limited weight. (Tr. 22-23, 842-846). The ALJ did not reject the opinion for improper reasons but rather referenced the lengthy analysis for Dr. Belen's opinion and cited specific evidence that was inconsistent with the opinion of "poor" functioning in all areas. (Tr. 22-23). The ALJ noted that Dr. Zambron's records did not contain any mental status examinations supporting his opinion and his only notation for mental status was that plaintiff was "Alert." (Tr. 23; *see* 704, 733, 747, 754, 765, 770, 789, 1087-89). Additionally, the ALJ pointed out there was no documentation of

treatment by Dr. Zambron from the amended onset date through the date of the opinion in October 2016. (Tr. 23). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The third opinion pertaining to plaintiff's mental functioning was the previously referenced opinion from social worker Ms. Rimer which the ALJ gave limited weight. (Tr. 23). Ms. Rimer opined plaintiff had serious limitations in most areas of functioning, with "limited but satisfactory" ability to function in a few others. (Tr. 1098-99). She also opined that plaintiff would be absent from work more than four days per month. (Tr. 1100). The ALJ properly explained Ms. Rimber, as a social worker, was not an acceptable medical source. (Tr. 23). Social workers are not acceptable medical sources but rather "other" sources and therefore not entitled to specific weight. *See* 20 C.F.R. § 404.1513(d)(3) (2017). Courts have held that an ALJ is not even required to weigh the assessment of an "other medical source" at all. *See Bulavinetz v. Astrue*, 663 F.Supp.2d 208, 212 (W.D.N.Y.2009); *Esteves v. Barnhart*, 492 F.Supp.2d 275, 281–82 (W.D.N.Y.2007) (ALJ is under no obligation to weigh a mental health counselor's assessment in determining whether a claimant is disabled). However, the ALJ went further and discussed the lack of explanation by Ms. Rimer and no identification of clinical findings to support the opinion. (Tr. 23, 1096). The ALJ noted that the form Ms. Rimer completed did not sufficiently define some of the terms it used. (Tr. 23). *See* 20 C.F.R. § 404.1527(c)(6) (ALJ may consider "other factors). ALJ Seeley again noted that Ms. Rimer's opinion was not consistent with the mental status examinations in Dr. Belen's notes (Tr. 23; *see* Tr. 704, 733, 747, 754, 765, 770, 789, 1087-89). *See* 20 C.F.R. § 404.1527(c)(4).

The ALJ's criticism of the forms used by the three treating sources was appropriate. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more

weight we will give that opinion."). The ALJ did not reject the opinions on the basis of the check-box format of the forms but specified additional reasons why the forms were not relied upon. The forms Dr. Belen and Dr. Zambron completed limited answers to "none," "poor," "fair," or "good" to describe plaintiff's functioning, but that "good" was defined as only "satisfactory," thereby weighting the scale to the low-end. (Tr. 22; *see* Tr. 829). The form from Ms. Rimer did not define key terms. (Tr. 23). The discussion of opinion format was just one sentence in lengthy discussions about each opinion and not the sole reason the opinions were not given controlling weight.

The reliance of the ALJ on the treating records, over the opinions, was not improper but allowed under the regulations. It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole. Here the ALJ provided a detailed analysis for each opinion that allowed the Court to follow her rationale. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")

**ACCORDINGLY, it is**

    **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is

        **DENIED;** and it is further

    **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 20) is

        **GRANTED.**

Dated: March 31, 2020            *J. Gregory Wehrman*
Rochester, New York              HON. J. Gregory Wehrman
                                 United States Magistrate Judge